## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRACY L. CIARDI,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Civ. No. 11-219E** |
| | ) |
| **LAUREL MEDIA INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

### OPINION

Pending before the Court is Defendant Laurel Media Inc.'s "Motion to Strike Pursuant to FRCVP 12(b)(6)" [ECF #4]. Although titled as a motion to strike, in fact, this Motion is a Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and forthwith, will be analyzed as such. For the reasons set forth below, Defendant's Motion is denied as to Count I of the Complaint, Plaintiff's breach of implied contract claim, and is granted with prejudice as to Count II of the Complaint, Plaintiff's detrimental reliance/promissory estoppel claim.

### I. Standard of Review.

In ruling on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted a Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief'." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002) and citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, n.8 (2007)).  A valid complaint requires only "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted).

The Supreme Court in Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. (citing Twombly, 550 U.S. at 555). See also Phillips, 515 F.3d at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,'

2

but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n. 3).

Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Iqbal, 129 S.Ct. at 1949.

Finally, if court decides to grant a motion to dismiss for failure to state a claim upon

which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide

whether leave to amend the complaint must be granted. As explained in Phillips, *supra*.: "We

have instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit

a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d

at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)).

**II. Factual Allegations.**

Plaintiff's Complaint alleges the following facts. Plaintiff currently resides in Aventura,

Florida. Complaint, ¶ 1. Defendant, acting through its Chairman and Chief Executive Officer,

Dennis Heindl ("Mr. Heindl"), initiated a series of communications with Plaintiff regarding her

moving from Florida to work for Defendant at its radio station, WDDH, in Ridgway,

Pennsylvania. Id. at ¶ 4. Mr. Heindl arranged for Plaintiff to fly to Ridgway on March 18, 2011

to see the station and to meet him and his staff. Id. at ¶ 5. Plaintiff met with Mr. Heindl on

March 18 and 19, 2011. Id. at ¶¶ 7-10. On March 18, 2011, Plaintiff and Mr. Heindl discussed

what Plaintiff's yearly salary would be and agreed that she would be paid an initial salary of

$40,000 per year, of which $10,000 would be advanced, similar to a signing bonus, and the

remaining $30,000 would be paid bi-weekly. Id. at ¶ 7. Mr. Heindl also led Plaintiff to believe

that she would be paid a quarterly bonus in the range of $750 to $1000, similar to those that were

3

paid to other employees of her stature. Id.  On March 19, 2011, as he drove Plaintiff to the airport to return to Florida, Mr. Heindl stated to Plaintiff that: (1) he did not like to have turnover at the radio station; (2) the radio station employees were like a family to him; (3) he was looking to purchase a radio station in Florida, and that if she remained employed with the Ridgway radio station, and if he bought a radio station in Florida, he would consider promoting her to station manager of the Florida station; (4) she would get raises every year; (5) he would pay for new furniture if Plaintiff needed it; and (6) she would receive bonuses every quarter. Id. at ¶ 9.  Mr. Heindl also stated to Plaintiff on March 19, 2011, that he needed an answer quickly as to whether or not she would come to work for Defendant Lauren Media, Inc. Id. at ¶ 10.

"Based upon the aforesaid representations, inducements, and promises," by Mr. Heindl to Plaintiff, Plaintiff resigned from her job in Florida. Id. at ¶ 11. She gave notice to her employer on March 21, 2011 and her last day of work in Florida was on March 27, 2011. Id.

Prior to Plaintiff leaving Florida, on March 22, 211, she received an e-mail from Mr. Heindl which indicated that his wife was looking for an apartment or house for Plaintiff. Id. at ¶ 12. Also before Plaintiff left Florida, on or about March 23 or 24, 2011, Mr. Heindl called Plaintiff and informed her that his wife was still looking for an apartment for Plaintiff, and that in the meantime, Plaintiff could stay at their lodge. Id. at ¶ 13.

From March 28, 2011 to April 11, 2011, Plaintiff packed and organized everything she needed in order to move from Florida to Pennsylvania. Id. at ¶ 14. Prior to Plaintiff moving from Florida to Pennsylvania, Plaintiff never received any communication from Mr. Heindl that" she would be coming up to Ridgway for only a look-see, or for a short period of time." Id.

4

Plaintiff flew from Florida to Pennsylvania on April 12, 2011. Id. at ¶ 15. Plaintiff's belongings were shipped to Pennsylvania; Defendant paid for the shipping of the items. Id.

Plaintiff began working for Defendant on April 14, 2011. Id. at ¶ 6. She spent April 14 and 15 doing production and commercials; the station had jingles and liners produced to be used for the show Plaintiff was going to host. Id.

Plaintiff was on the air from April 20 to April 22. Id. at ¶ 17. During that time she also helped to produce and obtained business cards, and all of the staff and Mr. Heindl expressed their satisfaction with how she sounded on air. Id.

Plaintiff continued working on air and doing production from April 25, 2011 to April 27, 2011. Id. at ¶ 19. On April 27, 2011 Mr. Heindl interviewed Plaintiff for a show he hosted "Talk of the Town" in order to introduce her to the listening audience as the station's new air talent. Id. at ¶ 20.

Plaintiff had dinner with Mr. and Mrs. Heindl on April 27, 2011; everything said about Plaintiff's performance that evening was positive. Id. at ¶ 21.

On April 28, 2011 Plaintiff worked on-air again and did more production. Id. at ¶ 22.

On April 29, 2011, Mr. Heindl called Plaintiff and stated in a cold tone of voice "Hate to be the bearer of bad news, Kiddo, but that position at the radio station is no longer available." Id. at ¶ 23. Plaintiff asked Mr. Heindl if she had done anything wrong. Id. at ¶ 24. He replied "No, it's not you. You didn't do anything wrong. That position is just not available any more. When do you want to leave, tomorrow or Monday." Id. Plaintiff responded "Monday." Id.

Immediately after the telephone call ended, Mr. Heindl texted Plaintiff and stated:

Tracy…this whole thing has been a disaster. It has disrupted Rose and my life and also the radio station. I am eliminating the job at the radio station and will

5

have a one way ticket for you back to Florida on Monday.  I will have and pay for
shipping your furniture back to you.  You should take today and get your affairs
in order. Close out bank accounts and get refund on your apartment.  If they do
not give it, I will reimburse you.  You will be paid up until today (Friday).  This is
how it is going to happen and I will not change my mind.  I am sorry it did not
work out but there is nothing I can do about it.  You do not have the experience
we are looking for and at least we tried…Any questions please call.

Id. at ¶ 25.

Plaintiff was willing to uproot herself from Florida and move to mostly rural, north

central Pennsylvania, only if the employment would be long-term, a minimum of four or five

years, and only if Defendant would honor its commitment to her, "as set forth in the

representations, inducements, and promises" set forth above, and only if Defendant would give

her a reasonable opportunity to perform her job duties. Id. at ¶ 26.

As of the date when Mr. Heindl notified Plaintiff that she was being terminated, she had

been employed by Defendant for just slightly more than two weeks. Id. at ¶ 29.  During the

slightly over two week time period when she was employed by Defendant, Plaintiff never

received any indication from Mr. Heindl that her performance was substantially deficient and she

never received a warning that she had to improve her performance in order to continue to be

employed by Defendant. Id. at ¶ 32.

**III. Legal Analysis.**

Plaintiff's Complaint contains two causes of action. Count I alleges a breach of implied

contract of continued long-term employment claim. Count II sets forth a detrimental

reliance/promissory estoppel claim.

6

A. **Count I - "Breach of implied contract of continued long-term employment,**
**based on substantial geographic dislocation."**

Turning to Count I of Plaintiff's Complaint, Defendant contends that "Plaintiff's
Complaint contains no allegation of an offer of employment for a certain period of time by Mr.
Heindl; nor are there any allegations that plaintiff accepted an offer of employment for a set
period of time" and "[t]hus, plaintiff has failed to set forth any facts which demonstrate with
sufficient specificity that a contract of employment of a certain period of time was ever formed
between plaintiff and Laurel Media., Inc." Defendant's Motion, ¶¶ 11-12, p. 3 (emphasis in
original).

Plaintiff's position is that "[a] review of Plaintiff's allegations shows that Plaintiff has
adequately pled a claim for an implied employment contract for a reasonable period of time
based upon the additional consideration she provided to Defendant when she accepted
Defendant's job offer and relocated from Florida to Pennsylvania." Plaintiff's Responsive Brief,
p. 2 (citing Cashdollar v. Mercy Hospital of Pittsburgh, 406 Pa. Super. 606, 595 A.2d 70, 72
(1991)). See also Id. at pp. 5-6 ("[s]imilar to the plaintiff in Cashdollar, Plaintiff has alleged she
was induced by Defendant's representation to resign from her job in Florida, that she relocated
from Florida to rural Pennsylvania, and that she was fired a mere two weeks after beginning her
employment with Defendant. Such facts, if determined to be true, may establish an implied
employment contract in Pennsylvania, and are "enough to raise a right to relief above the
speculative level'.").

As explained by the Pennsylvania Superior Court in Cashdollar, *supra*.:

In Pennsylvania, an employment relationship is generally considered to be "at-
will," and, absent a contract, may be terminated by either party at any time, for

7

any reason or for no reason. However, an employee can defeat the "at-will" presumption by establishing, *inter alia*, that the employee gave his employer additional consideration other than the services for which he was hired. As this Court stated in Darlington v. General Elec., *supra*, "a court will find 'additional consideration' when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform." It is a question of fact whether, in a given case, the additional consideration furnished by the employee is sufficient to rebut the at-will presumption.

Cashdollar, 595 A.2d at 72-73 (citations omitted). Applying the above-stated law to the facts of the case before it, the Cashdollar court found that the plaintiff-employee had presented evidence at trial to support the conclusion that he had undergone substantial hardships other than the services which he is hired to perform such that there was additional consideration and the at-will employment presumption had been rebutted; "[t]hus, we cannot say that the trial court erred in holding that the jury could properly find, based on this evidence, that an implied contract for employment existed between Cashdollar and Mercy. Id. at 74. In so holding, the court reasoned:

This Court has found insufficient additional consideration where an employee has suffered detriments, in the course of his or her employment, that are "commensurate with those incurred by all manner of salaried professionals." However, in the instant case, there was sufficient evidence that, in taking the job with Mercy, Cashdollar suffered greater hardship than those hardships "incurred by all manner of salaried professionals." Cashdollar gave up his secure employment with Fairfax Hospital Association where he had worked for over four years at a salary of $82,000.00 per year. In addition, Cashdollar uprooted his pregnant wife and two-year-old child and sold his home based on his understanding that he was going to a job where his special talents would be employed as Vice President of Human Resources at Mercy and also as a participant in the Eastern Mercy Health Alliance. In light of these special circumstances that attended Cashdollar's job change, we conclude that these hardships constitute sufficient additional consideration to rebut the at-will presumption. See Darlington v. General Elec., *supra* at 201, 504 A.2d at 315 (additional consideration regarded as sufficient when new employee must undergo substantial hardship such as moving family to take new position)....

8

Id. at 73-74 (footnote and citations omitted). The Cashdollar plaintiff had only been employed

by the defendant for sixteen days when he was "abruptly fired for allegedly creating an unstable

working environment." Id. at 72.

Another case where it was concluded that additional consideration was present such that

an implied contract for a reasonable time period was found in what would otherwise have been

an at-will employment arrangement is News Printing Co, Inc. v. Roundy, 409 Pa. Super. 64, 597

A.2d 662 (1991). In News Printing, the plaintiff, who had been employed for approximately

three months before he was terminated, sued for breach of contract. The state appellate court

reviewed the trial court record and concluded:

> we agree with the trial court that sufficient evidence was presented by [the
> plaintiff-employee] to support the jury's finding that an implied contract for a
> reasonable period of time existed between [the plaintiff and the defendant-
> employer]. By quitting his job [in Massachusetts], rejecting the job offer [in
> Massachusetts], selling his Massachusetts house, and purchasing a home in
> Pennsylvania, [plaintiff] provided additional consideration sufficient to rebut the
> at-will presumption. Moreover, [plaintiff's] statement that he needed six months
> to become effective and [defendant's] agreement to give [plaintiff] time to "get
> into" the job indicate the parties' intent to enter into a contract of employment for
> a reasonable period of time. Accordingly, the evidence is sufficient to support the
> jury's finding that the at-will presumption was overcome.

Id. at p. 71. See also Scullion v. EMECO Industries, Inc., 398 Pa. Super. 294, 580 A.2d 1356

(1990) (court affirmed trial court's finding that three months was not a reasonable period of

employment where the employee relocated his family from California to Hanover, Pennsylvania

and rejected a higher offer from his then current employer prior to accepting the position with the

defendant); Bair v. Purcell, 500 F.Supp.2d 468, 480 (M.D. Pa. 2007) (court denied summary

judgment on breach of contract claim by plaintiffs who were terminated approximately one year

after first being employed based on court's conclusion that a jury could find additional

9

consideration to overcome the at-will presumption given evidence of plaintiffs' relocation, the distressed sale of their home, their decision to forego other employment opportunities, and their arguably stronger bargaining power than the average employee).

To the contrary, there are numerous cases wherein courts reviewing claims of this nature have found that the detriments alleged by the employee-plaintiff to be "additional consideration" are simply detriments commensurate with those incurred by all manner of salaried professionals. For example, in <u>Veno v. Meredith</u>, 357 Pa. Super. 85, 515 A.2d 571 (1986), the state appellate court upheld the trial court's determination that there was insufficient evidence to overcome the employment at-will presumption where the plaintiff was fired after eight years even though the employee had given up a job with a newspaper and moved his family from New Jersey to Pennsylvania, and had throughout the years refused other employment opportunities); <u>Quint v. Thar Process, Inc.</u>, 2011 WL 4345925, *9 (W.D. Pa. Sept. 15, 2011) (J. Standish) (court granted motion to dismiss claim of employee who was terminated after working for eleven months where employee had commuted between Michigan and Pennsylvania for first six months of employment but did so as part of the parties' original agreement and seemingly had received compensation for these travel expenses, employee had listed his house in Michigan for sale but had not sold it, and his wife had relocated her employment to Pittsburgh); <u>Pinderski v. Commonwealth Telephone Enterprises, Inc.</u>, 2006 WL 2085996 (E.D. Pa. July 25, 2006) (court granted motion to dismiss plaintiff's breach of contract claim on the basis that the employee, who had been terminated less than one month after he began employment with defendant employer, had not alleged "sufficient additional consideration;" plaintiff had alleged that at the time defendant offered him the job, he resided in Illinois with his wife and children, that in order

to accept the job, plaintiff and his family would have had to eventually move to Pennsylvania and he had incurred expenses in preparing to move to Pennsylvania, and that when plaintiff accepted the job offer, his wife resigned from a well-paying job); Shaffer v. BNP/Cooper Neff, Inc., 1998 WL 575135, *7 (E.D. Pa. Sept. 4, 1998) (court granted motion for summary judgment where employee was terminated approximately six months after transferring to Singapore where transfer had originally been employee's idea, he neither sold a house or relocated family, and the transfer provided employee with additional significant benefits); Shriver v. Cichelli, 1992 WL 350226, *5-6 (E.D. Pa. November 19, 1992) (court granted summary judgment on breach of implied contract claim where plaintiff, who was terminated after being employed for four months, had been unemployed prior to accepting the position and relocating from New Hampshire to Pennsylvania, was willing to relocate, did not have to sell his home or move children and family, and the relocation was not related to a demand by a then current employer).

Turning to the allegations contained in Plaintiff's Complaint, Plaintiff alleges that based upon Defendant's job offer, she quit her job in Florida, moved herself and her belongs from Florida to Pennsylvania (defendant paying for the belongings to be moved), and that after working for Defendant for fifteen days, she was told that her position at the radio station was being terminated the next day and that she should plan to return to Florida. We find these factual allegations state a claim for breach of an implied contract of employment for a reasonable period of time that is plausible on its face. Therefore, Defendant's Motion with respect to Count I of the Complaint is denied.

11

## B. Count II – "Detrimental reliance/promissory estoppel."

With respect to Count II of Plaintiff's Complaint, in her Brief in Response to Defendant's Motion to Strike Pursuant to FRCVP 12(b)(6), Plaintiff states: "Plaintiff does not contest Defendant's argument for dismissal of Plaintiff's detrimental reliance/promissory estoppel claim at Count II of the Complaint. Plaintiff's Responsive Brief, p. 1 n. 1. As such, we will grant Defendant's Motion with respect to Count II of the Complaint and dismiss said count with prejudice.

## IV. Conclusion.

For the reasons set forth above, Defendant's Motion is denied as to Count 1 of the Complaint and granted with prejudice as to Count 2 of the Complaint. An appropriate order will follow.

January 5, 2012

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior District Court Judge

12